UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

KWESI MUHAMMAD,

        Plaintiff,

    v.

R. BURTON, et al.,

        Defendants.

No.  2:18-cv-2831 WBS AC P

FINDINGS & RECOMMENDATIONS

Plaintiff, a state prisoner proceeding pro se, is pursuing relief under Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12131 et seq., and Section 504 of the Rehabilitation Act (RA), 29 U.S.C.A. § 794.  Currently before the court is defendant's motion for summary judgment.  ECF No. 70.

I.      Procedural History

This case proceeds on plaintiff's second amended complaint.  ECF No. 13.  On screening, the court found that plaintiff had stated cognizable claims against defendant Bird in his official capacity.  ECF No. 15.  After the close of discovery, defendant filed a motion for summary judgment (ECF No. 70), which plaintiff opposes (ECF No. 77).

II.     Plaintiff's Allegations

The second amended complaint alleges that defendant Bird, sued in his official capacity, violated plaintiff's rights under the ADA and RA when prison officials failed to accommodate his

1

need for a handicapped-accessible shower.  ECF No. 13.  Specifically, plaintiff alleges that on January 16, 2018, he had surgery on his left foot, after which he was required to use crutches to avoid any weightbearing on that foot.  Id. at 4.  On January 21, 2018, plaintiff submitted an ADA accommodation request asking for grab bars to be installed in his housing unit's shower facility to accommodate his disability.  Id.  The request was denied on January 23, 2018, on the ground that plaintiff was already being accommodated with two different types of shower chairs, a handheld shower wand, and a fixed shower bench.  Id.  In denying the request, no additional information was gathered from plaintiff or his primary care provider.  Id.  On January 29, 2018, plaintiff submitted a second request for grab bars to be installed and that request was denied on February 12, 2018, for the same reasons and without any additional information-gathering.  Id.  Plaintiff asserts that the accommodations provided were not reasonable because they did not allow him to safely access the shower for over a month due to his disability.  Id. at 7.

III.    Motion for Summary Judgment

       A.    Defendants' Arguments

       In moving for summary judgment, defendant argues that plaintiff did not suffer from a permanent disability.  ECF No. 70-1 at 14-15.  As a result, the period of disability was narrower than plaintiff claims, and the "transitory and relatively minor nature" of plaintiff's impairment should be considered when determining whether plaintiff was reasonably accommodated.  Id. at 15.  Defendant also argues that plaintiff was not denied access to the shower due to his disability because he was provided a reasonable accommodation and there is no evidence that plaintiff was intentionally discriminated against due to his disability.  Id. at 15-19.

       B.    Plaintiff's Response

       "Pro se litigants must follow the same rules of procedure that govern other litigants." King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987) (citation omitted), overruled on other grounds, Lacey v. Maricopa County, 693 F.3d 896, 928 (9th Cir. 2012) (en banc).  However, it is well-established that district courts are to "construe liberally motion papers and pleadings filed by *pro se* inmates and should avoid applying summary judgment rules strictly." Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010).  The unrepresented prisoner's choice to proceed without counsel

2

"is less than voluntary" and they are subject to "the handicaps . . . detention necessarily imposes upon a litigant," such as "limited access to legal materials" as well as "sources of proof." Jacobsen v. Filler, 790 F.2d 1362, 1364 n.4 (9th Cir. 1986) (alteration in original) (citations and internal quotation marks omitted).  Inmate litigants, therefore, should not be held to a standard of "strict literalness" with respect to the requirements of the summary judgment rule.  Id. (citation omitted).

Accordingly, though plaintiff has largely complied with the rules of procedure, the court will consider the record before it in its entirety.  However, only those assertions in the opposition which have evidentiary support in the record will be considered.

Plaintiff opposes defendant's motion and argues that he had a qualifying disability and the fact that the disability was temporary is irrelevant.  ECF No. 77 at 3-4.  He further argues that he was not reasonably accommodated because the accommodations provided did not permit him to safely access the shower and that the prison failed to conduct an individual investigation in response to his request for accommodation.  Id. at 4-10.

IV.    Legal Standards for Summary Judgment

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Under summary judgment practice, "[t]he moving party initially bears the burden of proving the absence of a genuine issue of material fact."  In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1).

"Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case."  Oracle

3

Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325); see also Fed. R. Civ. P. 56(c)(1)(B). Indeed, summary judgment should be entered, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323. In such a circumstance, summary judgment should "be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(c). The opposing party must demonstrate that the fact in contention is material, i.e., a fact "that might affect the outcome of the suit under the governing law," and that the dispute is genuine, i.e., "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968). Thus, the "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Matsushita, 475 U.S. at 587 (citation and internal quotation marks omitted).

////

"In evaluating the evidence to determine whether there is a genuine issue of fact, [the court] draw[s] all inferences supported by the evidence in favor of the non-moving party." Walls v. Cent. Contra Costa Transit Auth., 653 F.3d 963, 966 (9th Cir. 2011) (citation omitted).  It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  See Richards v. Neilsen Freight Lines, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586 (citations omitted).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Id. at 587 (quoting First Nat'l Bank, 391 U.S. at 289).

Defendants simultaneously served plaintiff with notice of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure along with their motion for summary judgment.  ECF No. 70-5; see Klingele v. Eikenberry, 849 F.2d 409, 411 (9th Cir. 1988) (pro se prisoners must be provided with notice of the requirements for summary judgment); Rand v. Rowland, 154 F.3d 952, 960 (9th Cir. 1998) (en banc) (movant may provide notice).

V.      Legal Standard for Claims Under the ADA and RA

Title II of the ADA and the RA apply to inmates within state prisons.  Penn. Dept. of Corr. v. Yeskey, 524 U.S. 206, 213 (1998).  To state a claim under Title II of the ADA, a plaintiff must allege that:

> (1) he "is an individual with a disability;" (2) he "is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities;" (3) he "was either excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity;" and (4) "such exclusion, denial of benefits, or discrimination was by reason of [his] disability."

McGary v. City of Portland, 386 F.3d 1259, 1265 (9th Cir. 2004) (alteration in original) (quoting Thompson v. Davis, 295 F.3d 890, 895 (9th Cir. 2002) (per curiam)).  The term "disability" is defined as "a physical or mental impairment that substantially limits one or more major life activities" which includes but is not limited to walking and standing.  42 U.S.C. § 12102(1)(A),

5

(2)(A).  For a viable claim under the RA, the program or activity at issue must also receive federal funds.  See 29 U.S.C. § 794(b) (requiring the program or activity receive "Federal financial assistance"); Zukle v. Regents of the Univ. of Cal., 166 F.3d 1041, 1045 n.11 (9th Cir. 1999) ("There is no significant difference in analysis of the rights and obligations created by the ADA and the Rehabilitation Act." (citations omitted)).

To be entitled to compensatory damages under the ADA, a plaintiff must show the discrimination was the result of deliberate indifference, which can be shown by alleging facts showing that he notified the public entity of his need for accommodation and that the entity's failure to act was "more than negligent, and involve[d] an element of deliberateness." Duvall v. County of Kitsap, 260 F.3d 1124, 1138-39 (9th Cir. 2001) (citations omitted).  A denial of a request for accommodation without investigation is sufficient to create an issue of fact as to the question of deliberate indifference.  Updike v. Multnomah County, 870 F.3d 939, 954 (9th Cir. 2017).

VI.    Undisputed Material Facts

At all times relevant to the complaint, plaintiff was an inmate in the custody of the California Department of Corrections and Rehabilitation (CDCR) and housed on the ground floor of Facility C at Deuel Vocational Institution (DVI).  Defendant's Statement of Undisputed Facts (DUSF) (ECF No. 70-6) ¶ 1; Response to DSUF (ECF No. 77 at 16-22) ¶ 2.

The CDCR has a Disability Placement Program (DPP), which is a system for tracking, housing, and programing inmates with disabilities that require specialized placement considerations.  DSUF ¶ 2; Response to DSUF ¶ 2.  The DPP designates certain facilities for the placement of qualifying inmates with permanent mobility and other impairments of such severity as to impact placement needs.  DSUF ¶ 3; Response to DSUF ¶ 3.  Qualifying inmates are assigned DPP codes associated with their disabilities and housing restrictions, such as DPW for an inmate who requires a wheelchair.  DSUF ¶ 4; Response to DSUF ¶ 4.  At the times relevant to the complaint, plaintiff was not permanently disabled, was not a DPP participant, and was not

////

////

assigned any DPP code for needing a wheelchair.[1]  DSUF ¶ 7; Response to DSUF ¶ 7.

The CDCR is currently subject to a settlement agreement in Armstrong v. Newsom, No. 94-cv-2307 CW (N.D. Cal.), which applies to all inmates with physical disabilities.  DSUF ¶ 5; Response to DSUF ¶ 5.  Under Armstrong, the CDCR has agreed to comply with the 2010 ADA Accessibility Guidelines for inmates that fall under the DPP categories of DWP or DPV.  DSUF ¶ 6; Response to DSUF ¶ 6.  The CDCR has also agreed to implement the Armstrong Master Plan, which is the CDCR's transition plan to bring identified institutions and facilities up to accessibility guideline standards.  Id.  Because plaintiff did not have a qualifying disability with a corresponding DPP code, the CDCR was not obligated under Armstrong to provide him with a fully accessible shower as described by the accessibility guidelines.[2]  DSUF ¶ 8.  At all times relevant to this case, DVI Facility C was not identified by the Armstrong Master Plan as a facility that needed to be brought into compliance with the accessibility guidelines.  DSUF ¶ 9; Response to DSUF ¶ 9.  However, the CDCR was still obligated to consider plaintiff's requests for any reasonable accommodations.  Lorey Decl. (ECF No. 70-2) ¶¶ 10-11.

At all times relevant to the complaint, the process for requesting a reasonable accommodation at DVI was to submit a CDCR 1824 Reasonable Accommodation Request form.  DSFU ¶ 10; Response to DSUF ¶ 10.  Any inmate could submit a CDCR 1824 form when they were having difficulty accessing a CDCR program, service, or activity due to a disability.  DSUF

---

[1]  Plaintiff disputes DSUF ¶ 7 on the ground that he was temporarily assigned the DPP code DLT.  Response to DSUF ¶ 7.  To the extent DSUF ¶ 7 indicates that plaintiff was not assigned a DPP code for needing a wheelchair or having other mobility issues, defendant has stated that plaintiff was temporarily assigned DPP code DLT, which indicates the need for level terrain due to a mobility or health concern.  DSUF ¶ 17.  DSUF ¶ 7 is therefore disputed to the extent that the evidence shows that plaintiff was temporarily assigned a DPP code indicating some mobility issue.  However, there is no evidence that the DLT assignment indicated the need for a wheelchair, and plaintiff does not dispute that he was not permanently disabled or cite evidence showing that temporary assignment of a DPP code made him a participant of the DPP.  Response to DSUF ¶ 7 (citing ECF No. 70-2 (Lorey Decl.) at 4, ¶ 8).  The remainder of DSUF ¶ 7 is therefore undisputed.

[2]  Plaintiff argues that the CDCR was required to provide him an accommodation irrespective of Armstrong but does not dispute that he was not covered by Armstrong, and the evidence on which defendant relies affirms that CDCR remained obligated to consider requests for reasonable accommodation regardless of Armstrong.  DSUF ¶ 8 is therefore deemed undisputed.

7

¶ 11; Response to DSUF ¶ 11.  CDCR 1824 forms were available in all housing units, libraries, and program areas at CDCR institutions, including DVI, and were collected daily and promptly screened for urgent/emergent issues.  DSUF ¶ 12; Response to DSUF ¶ 12.  Any issues identified as an emergency would be triaged or processed within twenty-four hours, the claimant would be interviewed, and an interim accommodation would be provided as necessary while the request was being reviewed by the Reasonable Accommodation Panel (RAP).  DSUF ¶ 13; Response to DSUF ¶ 13.

All CDCR 1824 requests were reviewed by a RAP committee within five business days, and a written response was provided within thirty days.  DSUF ¶ 14; Response to DSUF ¶ 14. The response would include what actions, if any, were taken in response to the request and if the request for accommodation was denied, the response would articulate the reason for the denial. Id.  At each institution, an ADA Coordinator, who was an Associate Warden, served as the chairperson of the RAP committees and signed the final response.  DSUF ¶ 15; Response to DSUF ¶ 15.

On January 16, 2018, plaintiff received surgery on his left foot and was issued and received crutches.  DSUF ¶ 16; Response to DSUF ¶ 16.  Based on his post-surgical medical needs, plaintiff was temporarily placed in the DPP category of DLT, which meant he required a relatively level terrain or path of travel accommodation to ambulate due to his mobility or health concerns.  DSUF ¶ 17; Response to DSUF ¶ 17.

On January 19, 2018, plaintiff requested a wheelchair even though his physician and medical staff had offered and recommended that he use crutches following the foot surgery. DSUF ¶ 19; Response to DSUF ¶ 19.  Medical staff issued a temporary wheelchair the same day and documented that the temporary accommodation would expire on February 2, 2018.  Id. Defendant asserts that plaintiff was also accommodated with access to a portable shower chair with wheels that could be locked to secure the chair in place.  DSUF ¶¶ 20-21.  The Facility C lower tier shower also had a shower wand, a fixed bench, and the floor of the shower was made of

////

////

8

unglazed textured tiles that created a slip-resistant surface.[3]  DSUF ¶ 22.  Plaintiff asserts that he was provided with a commode chair, which did not provide reasonable accommodation, and that he was unaware the wheels could be locked but would have regardless been unable to independently engage the locks.  Response to DSUF ¶¶ 20-21.  He also asserts that the fixed bench was for getting dressed and undressed and was not a shower bench.  Response to DSUF ¶ 22.

On January 21, 2018, plaintiff submitted a CDCR 22 Inmate/Parolee Request for Interview, Item, or Service Form, which stated that he was in a wheelchair and that there were no safety bars in the Facility C first floor shower, which violated the ADA.  DSUF ¶ 23; Response to DSUF ¶ 23.  He requested that safety bars be installed.  Id.  The associate warden and ADA coordinator received plaintiff's CDCR 22 form the same day and responded on January 23, 2018.  DSUF ¶ 24; Response to DSUF ¶ 24.  The response informed plaintiff that he was being accommodated with two different types of shower chairs, a handheld shower wand, and a fixed shower bench.  Id.  On January 29, 2018, plaintiff resubmitted the CDCR Form 22 for supervisor review and stated that he was dissatisfied because "[t]he above-mentioned accommodations do not absolve this facility from ADA requirements of having safety hand bars in the shower."  DSUF ¶ 25; Response to DSUF ¶ 25; ECF No. 70-2 at 24.  Chief Deputy Warden Kesterson responded on February 1, 2018, and the response was returned to plaintiff on February 12, 2018.  ECF No. 70-2 at 24.  The response reiterated the accommodations provided, and stated that they met the requirements.[4]  DSUF ¶ 26; Response to DSUF ¶ 26.

On February 2, 2018, plaintiff returned his wheelchair to medical staff due to the temporary accommodation expiring, and the nurse recorded that he said he did not need it anymore.  DSUF ¶ 27; Response to DSUF ¶ 27.  On February 20, 2018, plaintiff attended a

---

[3]  Plaintiff disputes DSUF ¶ 22 in part on the ground that the evidence he provides shows that non-slip strips were applied to the shower, "which suggests that the floor was not slip-resistant."  Response to DSUF ¶ 22.  However, the fact that a floor has non-slip strips does not mean that it cannot also be a slip-resistant surface and plaintiff relies solely on his own conjecture to establish that it was not.  This portion of DSUF ¶ 22 is therefore deemed undisputed.

[4]  Plaintiff disputes DSUF ¶ 26's representation that the Kesterson responded on February 1, 2018, but does not otherwise dispute the contents of the response.

podiatry consultation at which he was examined and discharged, with the doctor stating he "can do full activities and normal shoe as tolerated." DSUF ¶ 28; Response to DSUF ¶ 28. Plaintiff had a follow-up with his physician on February 23, 2018. DSUF ¶ 29; Response to DSUF ¶ 29. The physician confirmed the podiatrist's recommendation and noted that plaintiff's surgical wound had healed and he had no more pain in his left foot. Id.

On February 23, 2018, plaintiff filed a grievance, which was assigned No. DVI-18-00635, and complained that his request for the installation of grab bars in the shower had been incorrectly denied. DSUF ¶ 30; Response to DSUF ¶ 30. He stated that he had only been provided one shower chair and it was on wheels, and that to be ADA compliant the shower had to have a grab bar and non-skid flooring in addition to a shower chair mounted on non-skid feet. Id.; ECF No. 70-2 at 37, 39. The grievance was bifurcated so that it could be addressed through both the grievance process and the RAP process. DSUF ¶ 31; Response to DSUF ¶ 31.

On February 28, 2018, plaintiff was interviewed as part of the RAP process and an interim accommodation procedure interview worksheet was completed. DSUF ¶ 32; Response to DSUF ¶ 32. It was noted that plaintiff had been issued a wheelchair and crutches on January 19, 2018; that he was able to attend all programs safely with the provided accommodations; that he wanted grab handles installed in the shower; that there was only one shower chair; and that he wanted a wider chair and grab handles. Id. On March 1, 2018, a nurse completed a disability verification process worksheet as part of the RAP process. DSUF ¶ 33; Response to DSUF ¶ 33. The nurse reviewed plaintiff's medical file and noted that he had been medically evaluated on January 19 and February 23, 2018; he had a temporary lower bunk and lower tier chrono that expired on March 31, 2018; he had no disability indicated; crutches, cane, and wheelchair were not medically indicated; and he could perform normal activities based on his provider's February 23, 2018 examination. Id. On March 2, 2018, the RAP issued a response noting that plaintiff had no listed disabilities; his wheelchair and crutches had been retrieved because they were not warranted; he had been informed that he could resume normal activities; and he had been provided a shower chair, fixed shower bench, and a shower wand. DSUF ¶¶ 34, 36; Response to DSUF ¶¶ 34, 36. Based on the investigation, the RAP determined that installation of grab bars

10

was not warranted.  Id.  On March 5, 2018, medical staff documented that plaintiff had returned his crutches.  DSUF ¶ 37; Response to DSUF ¶ 37.

On April 10, 2018, plaintiff was interviewed as part of the grievance process investigation.  DSUF ¶ 38; Response to DSUF ¶ 38.  That same day, the shower area was inspected and it was confirmed that the chair had wheels, the wheels had functional locks that could be used to secure the chair in place, and the chair was equipped with an arm rest or grab bars.  DSUF ¶ 39.  It was also confirmed that there was a fixed shower bench and a shower wand.  ECF No. 70-2 at 42.  Plaintiff asserts that the bench was not a shower bench but a bench for getting dressed and undressed.  Response to DSUF ¶ 22.  Pictures of the shower show that the bench is in the shower room but appears to be outside the spray zone and is on the opposite side of the shower room from the shower wand.  ECF No. 70-2 at 61-62, 64-65.  On April 16, 2018, a second-level response was issued which noted the RAP's decision on the same issue and the investigation of the shower accommodations.  DSUF ¶ 40.  The grievance was partially granted by confirming the prison was in compliance with current ADA laws and denied the request to modify the showers.[5]  Id.

VII.    Discussion

The parties do not dispute that plaintiff's injury, though temporary, qualified as a disability under the ADA and RA.  Instead, they dispute the duration and severity of his disability, whether the accommodations he was provided were reasonable, and whether the denial of his request for a grab bar constituted deliberate indifference.

With respect to the duration of plaintiff's disability, defendant is correct that it extended no further than February 20, 2018, when the podiatrist discharged plaintiff and advised he could resume normal activity, not (as plaintiff argues) February 23, 2018, when plaintiff's primary care physician advised him to resume normal activities.  Plaintiff does not argue that his disability

_____

[5]  Plaintiff disputes DSUF ¶ 40 on the ground that the shower had undergone alteration since January 1992, triggering the applicability of the ADA Standards for Accessible Design, with the implication being that the shower was not in compliance.  Response to DSUF ¶ 40.  However, the evidence cited is his declaration in which he states he believes it had undergone alteration without offering any foundation for his belief.  PL's Decl. ¶ 13 (ECF No. 77 at 68).  DSUF ¶ 40 is therefore deemed undisputed.

persisted after he saw the podiatrist or that the podiatrist was not qualified to opine as to his condition.  Instead, he argues that his period of disability extended until he saw his primary care physician because the regulations provide that his "primary care provider ('PCP') exercised sole province over his health care."  ECF No. 77 at 4.  But as defendant points out, plaintiff's primary care physician simply affirmed the podiatrist's recommendation.  ECF No. 78 at 2-3; see also ECF No. 70-2 at 32-33 (noting podiatrist recommendation and advising plaintiff of the same).

As for plaintiff's claim that defendant failed to accommodate his disability, plaintiff has not demonstrated that he was denied access to the shower because of his disability, and even if the court assumes that denial of plaintiff's request to install a grab bar resulted in a failure to accommodate his disability, he has not offered any evidence that the failure was the result of deliberate indifference.

Although plaintiff argues that he required a wheelchair accessible shower, the undisputed evidence shows that plaintiff was in a wheelchair for his convenience, not due to medical necessity, and that he required only crutches to ambulate.  DSUF ¶ 19; Response to DSUF ¶ 19. Therefore, to the extent plaintiff asserts that he was denied accommodation on the basis that he was not provided the same accommodations that would be required for a wheelchair user, he fails to show that his disability was not reasonably accommodated.  Furthermore, plaintiff argues only that he could not access the shower when using the wheelchair.  ECF No. 77 at 6.  Even if the court assumes that plaintiff could not safely access the shower while using a wheelchair, as he claims, the undisputed evidence shows that he was still in possession of his crutches, and he offers no allegations or evidence regarding the sufficiency of the accommodations when using his crutches.  See DSUF ¶¶ 16, 37 (identifying when plaintiff received and returned his crutches); Response to DSUF ¶¶ 16-37.  Plaintiff has therefore failed to come forward with any evidence that his disability was not reasonably accommodated.

Even if the court assumes that the failure to install grab bars denied plaintiff the ability to access the shower, he has not shown the denial was a result of deliberate indifference.  First and foremost, plaintiff never indicated to defendant that he required the grab bars to shower safely or that the accommodations he was already being provided were insufficient to address his specific

12

needs.  Instead, in both his initial request and his reply to the response that he was being accommodated, plaintiff simply asserted that the failure to have grab bars did not comply with ADA requirements.  ECF No. 70-2 at 24.  Because there is no factual basis for a finding that defendant was aware of any specific risk to plaintiff, the court cannot find that any failure to act was the result of deliberate indifference.

Additionally, although plaintiff argues that defendant failed to investigate his request, this appears to be speculation based on his assertions that the responses he received inaccurately portrayed the accommodations which were available and that he was not interviewed until after his disability had resolved.  ECF No. 77 at 9-10.  However, these allegations do not demonstrate failure to conduct an investigation.  While plaintiff disputes the description of the accommodations provided, the response to his accommodation request was not inaccurate with the arguable exception of the dispute regarding how many shower chairs were available.[6]  This is a semantic dispute rather than a factual one.  Plaintiff was indisputably provided a chair to sit in while showering.  Though he states that the fixed bench was for changing and therefore not a shower bench, his own description of the bench and the pictures provided by defendant show that it was in fact a bench in the shower.  ECF No. 70-2 at 61-62, 64-65; Response to DSUF ¶ 22. That the response listed accommodations already being made available to plaintiff indicates that an inquiry into plaintiff's circumstances was in fact conducted.  As for plaintiff's assertion that he was not interviewed, although "the Acts create a duty to gather sufficient information from the [disabled individual] . . . to determine what accommodations are necessary," Duvall, 260 F.3d at 1139 (first alteration in original) (citation omitted), there is no requirement plaintiff had to be interviewed in order to obtain additional information from him.[7]  The CDCR 22 form included an opportunity for plaintiff to reply to the staff response and explicitly prompted him to explain why he disagreed with the staff response, which in this case was that he was already being

---

[6]  The court assumes for purposes of evaluating the motion for summary judgment that plaintiff is correct and there was only one chair available.

[7]  It also does not appear that additional information would have been needed from plaintiff when the expressed basis for the request was not that the provided accommodations were inadequate or that he required the additional accommodation of a grab bar but was instead that the lack of a grab bar violated the ADA.

accommodated.  ECF No. 70-2 at 45.

Compensatory damages are only available under the ADA and RA where the failure to accommodate is the result of deliberate indifference.  Lovell v. Chandler, 303 F.3d 1039, 1056 (9th Cir. 2002) (citing Duvall v. County of Kitsap, 260 F.3d 1124, 1138 (9th Cir. 2001).  Because there was no deliberate indifference in this case, plaintiff's claim for damages must fail and injunctive relief is not available because plaintiff's temporary disability has resolved and the facility at issue has since been closed.

VIII.    Conclusion

For the reasons set forth above, defendant's motion for summary judgment (ECF No. 70) should be granted.

IX.    Plain Language Summary of this Order for a Pro Se Litigant

You have not provided evidence that your disability was not reasonably accommodated. Even if the refusal to install grab bars denied you the ability to access the shower, you have not provided evidence showing that the denial was due to deliberate indifference and so you cannot obtain damages.  There is also no injunctive relief available because your disability was temporary so you no longer require accommodation for that disability and DVI is now closed.

Accordingly, IT IS HEREBY RECOMMENDED that defendant's motion for summary judgment (ECF No. 70) be GRANTED.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be served and filed within fourteen days after service of the objections.  The

////

////

////

////

14

parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: March 16, 2026

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE

15